**Michael T. Ashley, Esq.**
The Law Office of Thomas R. Ashley
50 Park Place, Suite 1400
Newark, New Jersey 07102
P. 973.623.0501 F .973.623.0329
E. m@traesq.com
Bar No. 270032021
*Attorneys for Plaintiff Jeffrey Sutton*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY SUTTON,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF BLOOMFIELD; BLOOMFIELD POLICE DEPARTMENT; CAPTAIN GARY PETERS, in his Official and Individual capacity; CAPTAIN PATSY SPATOLA, in his Official and Individual capacity; SERGEANT NICHOLAS POLIDORO, in his Official and Individual capacity; SERGEANT MARK MOSKAL, in his Official and Individual capacity; DETECTIVE SALVATORE CORDI, in his Official and Individual capacity; OFFICER RAYMOND DIAZ, in his Official and Individual capacity; and JOHN DOES 1-20 (unidentified individuals or entities), in their official and individual capacities,<br><br>Defendants. | **COMPLAINT AND DEMAND FOR TRIAL BY JURY**<br><br><br>Civil Action No.: |

Plaintiff JEFFREY SUTTON, residing at 370 Central Avenue, City of Orange, County of Essex, State of New Jersey ("Plaintiff") by and through retained counsel Michael T. Ashley, Esq. hereby alleges and complains:

**PRELIMINARY STATEMENT**

1.      This is a civil rights action brought to seek redress for the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, through the Civil Rights Act of 1866, as amended, codified as 42 U.S.C. § 1981, the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983, §1985, pendent claims through the New Jersey Constitution, and other claims under the common law.

2.      Plaintiff's rights to be free from excessive force, confront the witnesses against him, and be free from maliciously prosecuted were violated when officials of the BLOOMFIELD POLICE DEPARTMENT ("BPD") used excessive force against him on or about November 9, 2020 and thereafter bore false witness against him in official reports, causing Plaintiff to endure permanent injuries. By reason of Defendants' use of excessive force and proffering untrue attestations, Plaintiff was deprived of his rights secured by the New Jersey Constitution, the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution as well as other rights under the common law.

3.      Plaintiff seeks an award of compensatory damages, punitive damages, and attorneys' fees and costs as set forth in more detail below.

**JURISDICTION AND VENUE**

4.      The United States District Court for the District of New Jersey has original jurisdiction of this action under 28 U.S.C. § 1331 and 1343(a)(3), insofar as certain causes of action pleaded herein arise under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983, 42 U.S.C §1985, and the Fourth and Fourteenth Amendments to the United States Constitution.

5.      In addition, the United States District Court for the District of New Jersey has supplemental jurisdiction over the pendent claims pleaded herein, pursuant to 28 U.S.C. § 1367.

2

6.      Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

7.      Plaintiff was at all material times a resident of City of Orange, Essex County, New Jersey.

8.      Defendant TOWNSHIP OF BLOOMFIELD (hereinafter "Bloomfield") is a municipal corporation and the public employer of CAPTAIN GARY PETERS ("Peters" herein), CAPTAIN PATSY SPATOLA ("Spatola" herein), SERGEANT NICHOLAS POLIDORO ("Polidoro" herein), SERGEANT MARK MOSKAL ("Moskal" herein), DETECTIVE SALVATORE CORDI ("Cordi" herein), OFFICER RAYMOND DIAZ ("Diaz" herein) (collectively "Officer Defendants").

9.      Officer Defendants at all times in the relevant period, were duly appointed Officers of the BLOOMFIELD POLICE DEPARTMENT ("BPD" herein) acting under color of law. Officer Defendants are being sued individually and in their official capacities.

10.      The BPD is and was, at all times in the relevant time period, a division and/or department of the Bloomfield entrusted with, among other things, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of the Bloomfield.

11.      Defendants JOHN DOES 1–20, are presently unknown police officers, employees, agents, acting supervisors, and/or representatives of Bloomfield, and/or BPD, and/or other yet unknown public entity, making no representation as to gender or rank, whose unlawful actions are described, referenced, and/or set forth herein.

3

12.     The true names and shield numbers of defendants John Does 1–20 are not currently known to Plaintiff. However, they may be employees or agents of the BPD or Bloomfield.

13.     Bloomfield, BPD, Peters, Polidoro, Spatola, Moskal, Diaz, Cordi, and John Does 1-20 are collectively referred to herein as, "Defendants."

14.      The Officer Defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and deliberate indifference to Plaintiff' rights.

15.     At all relevant times, the Officer Defendants acted in concert to assist each other in performing the various actions described herein and lending their physical presence, support, and the authority of their offices and to one another.

## STATEMENT OF FACTS

16.     On November 9, 2020, Plaintiff was operating a motor vehicle within the Township of Bloomfield.

17.     His license plate had been flagged as a felony vehicle, prompting law enforcement to initiate a motor vehicle stop.

18.     From the beginning, responding members of the Bloomfield Police Department acted in a reckless manner, crossing into oncoming traffic in an unmarked SUV to meet Plaintiff's vehicle head on.

19.     Two men in suits and an officer in a white shirt would emerge from the unmarked SUV with guns drawn.

20.     They pointed their weapons at the Plaintiff's head as they ran towards his vehicle.

21.     Initially, Plaintiff was unsure of who the men were and reversed away in retreat.

22.     Soon thereafter, he recognized one of the men as a member of law enforcement and came to a stop.

4

23.     It later became known to the Plaintiff that the three individuals were Peters, Spatola, and Moskal.

24.     Given nationwide protests of police brutality and local acts of extrajudicial violence under color of law in the months preceding, Plaintiff had a heightened fear of unprovoked attacks perpetrated by law enforcement.

25.     This fear was further fueled by the unnecessary escalation of the situation and overly aggressive response by the Bloomfield Police Department.

26.     The men, especially Peters, kept their weapons trained on the Plaintiff and tried repeatedly to break the windows of his automobile.

27.     The Plaintiff was wholeheartedly terrified.

28.     Plaintiff shut his car's engine off, to show officers that he intended to comply with them.

29.     He held his hands up intermittently and tried to keep them visible through most of the encounter.

30.     Plaintiff genuinely feared for his life during the entirety of the ordeal.

31.     In a November 20, 2020, statement to the Essex County Prosecutor's Office, Peters would remark that the Plaintiff was, "taking cover as if he was going to be fired upon."

32.     Peters positioned himself directly in front of Plaintiff's vehicle and used his body to block its path forward.

33.     At one point, Plaintiff became so alarmed that the officers would fire upon him at any moment, he retreated to the backseat of his vehicle as to create space and cover between himself and law enforcement.

34.     He verbally pleaded for his life, assured officers that he did not have a weapon, and begged them to put theirs away.

5

35.     Moskal and Spatola were nearby throughout and even seemed to recognize that Plaintiff was not a threat after some time.

36.     The two holstered their weapons and attempted to communicate with Plaintiff, assuring him that he could safely be taken into custody.

37.     All the while, Peters had his BPD issued handgun pointed at Plaintiff's head, spewed obscenities, and repeatedly screamed that he would shoot him.

38.     There was a realistic opportunity to deescalate the situation, but Moskal and Spatola instead stood by.

39.     Moskal and Spatola had a duty to intervene and ample opportunity but did not take any reasonable step to mitigate Peters' escalating aggression or protect Plaintiff from his use of excessive force.

40.     In light of Peters' continued threats, Plaintiff believed that he would imminently have lethal force used against him and tried to navigate his automobile around the officers to safety.

41.     His belief was unfortunately realized when Captain Peters and Officer Diaz ("Shooting Officers") fired their service weapons at Plaintiff, striking him multiple times.

42.     None of the BPD officers had witnessed Plaintiff commit any violent act or possess any weapon.

43.     The shooting of Plaintiff was without justification, adequate provocation, or just cause and constituted an act of excessive force consistent with Bloomfield and BPD's custom of disproportionate violence towards Blacks.

44.     After the shooting, Captain Peters would relate to other officers at the scene that he was without injury.  However, both Shooting Officers reported to the hospital and indicated that they had been hurt in their respective Use of Force Reports.

6

45.     The unprovoked gunshot injuries needlessly inflicted upon Plaintiff have caused him permanent emotional, psychological, and physical injuries.

46.     Detective Salvatore Cordi was the affiant of a criminal complaint, executed under penalty of law, asserting that Plaintiff had struck Captain Spatola and Sergeant Moskal with his vehicle.

47.     This attestation was undertaken at a time when Cordi and the BPD had reviewed body camera, dash camera, and civilian provided video depicting that Plaintiff did not strike any member of law enforcement with his vehicle.

48.     A complaint-warrant charging Plaintiff with striking police officers was executed at a time when Cordi and other members of the BPD, including but not limited to the Officer Defendants, had complete and reliable information contradicting the false claims.

49.     Additionally, there was a Supplemental Report executed by Detective Cordi and approved by Sergeant Polidoro that falsely claimed Plaintiff had struck Captain Spatola and Sergeant Moskal with his vehicle at a time when no member BPD had a reasonable basis to substantiate such an allegation.

50.     The cumulative effect of the false reports is that Plaintiff was effectively estopped from knowing the source of the untrue allegations, those involved in concocting such allegations, and confronting those persons to defend himself against prosecution.

51.     Upon information and belief, the ulterior motive to create official reports bearing false witness against Plaintiff was to improperly shield the Officer Defendants from liability for their unlawful exercise of excessive force against him, racial animus, and other constitutional violations.

7

52.     Each of the Officer Defendants either knowingly executed a falsely attested official report or otherwise knowingly provided false information that they knew would be relied on for the creation of such a report.

53.     Upon information and belief, Moskal and Spatola made representations to Cordi that caused him to believe that they had been struck by Plaintiff's vehicle.

54.     Nonetheless, Cordi bore a non-dischargeable duty of due diligence to ensure the attestations he submitted were accurate.

55.     An undertaking of due diligence by Cordi would have revealed that Plaintiff did not in fact strike any member of law enforcement with his vehicle.

56.     Cordi proffered in his official reports that he had reviewed the very videos that would eventually prove them false.

57.     Subsequent to the shooting of Plaintiff, responding officers would utilize cell phones instead of radios designated for official communications to prevent public disclosure of the details of the assault.

58.     The Officer Defendants' acts were undertaken with animus for the Plaintiff based on his race and in accord with the pattern, policy, and custom propagated by BPD of violating the constitutional rights of Blacks or African Americans.

59.     The false reports referenced herein were the actual and proximate cause of Plaintiff being charged with Aggravated Assault on a Law Enforcement Officer, represented a perversion of the legitimate use of process, and were intended to conceal the true nature of the incident.

60.     Upon information and belief, Peters, Spatola, Moskal, Polidoro, Diaz, and others yet unknown, engaged in a conspiracy to cover up their unlawful acts by falsifying reports

reflecting that the Plaintiff assaulted law enforcement by hitting them with his vehicle, as justification for their use of deadly force against him.

61.     These false reports include, but are not limited to:

      i        Use of Force Reports of Captain Peters and Officer Diaz

      ii       State of New Jersey Complaint-Warrant W-2020-483-0702

      iii      BPD Supplemental Report, Case 20-92272E, Detective Cordi, November 10, 2020

62.     The improper and falsely attested charges were relied on to detain Plaintiff pending the resolution of the charges against him.

63.     Upon information and belief, his pretrial detention, based on the falsified reports, resulted in Plaintiff sustaining permanent physical, emotional, and psychological injuries.

64.     Upon information and belief, the false reports were intended to portray the BPD and its officers as victims rather than violent assailants who needlessly disbursed deadly force without legal justification.

**SUPPLEMENTAL FACTS CONCERNING MUNICIPAL LIABILITY**

65.     BPD is the entity legally responsible for the hiring, retention, supervision, discipline, and training of employees of the BPD, including each of the Officer Defendants.

66.     BPD is an administrative subdivision of Bloomfield. Bloomfield, acting through its mayor and Town Council, is the definitive policymaking authority for all officially adopted policies and procedures implemented by employees of BPD, including the Officer Defendants.

67.     Bloomfield and the BPD have failed to properly train and/or supervise the Officer Defendants and failed to provide the appropriate safeguards to prevent the violation of the rights of Plaintiff.

68.     The aforementioned failures of Bloomfield have established customs, policies, practices, procedures, and rules of Bloomfield and the BPD, that include but are not limited to the following unconstitutional practices:

     i.   Failing to properly train;

     ii.   Failing to supervise;

     iii.   Failing to properly retain;

     iv.   Subjecting persons to violations of their constitutionally protected rights;

     v.   Subjecting persons to the use of excessive force

     vi.   Failing to issue appropriate discipline

     vii.   Condoning the execution of false reports; and

     viii.   Subjecting persons to false arrest.

69.     Bloomfield is on notice that there is a wide-spread and systemic pattern, custom, and practice within the BPD to use excessive force and otherwise perpetrate constitutional violations upon members of the public.

70.     Bloomfield has been noticed of the unconstitutional conduct of its officers and employees through previous notices of intents to sue, lawsuits, internal affairs investigations, criminal convictions, and media reports as referenced herein and otherwise.

71.     The victims of said illegal conduct have in many instances either have not committed a crime or have been accused of minor offenses.

72.     There is a pattern and custom of BPD making great efforts to conceal their use of excessive force by acting outside of the view of third-party witnesses and filing false police reports that fail to document their illegal actions. Improper charges are often pursued against victims, then later dropped in attempts to intimidate them.

73.    There is a pattern and custom of BPD condoning illegal and unconstitutional practices within their ranks. For example:

    i.    Crespo v. Township of Bloomfield, et. al, No. 2:14-cv-07279 (November 21, 2014): Members of the BPD pitilessly beat a man in their custody, without provocation, resulting in severe injuries including a thoracic spine fracture.

    ii.    Jeter v. Township of Bloomfield, et. al, No. 2:14-cv-05387 (August 27, 2014): Falsely arrested Black man was accused of grabbing officers gun and brutishly beaten before being completely exonerated, both officers involved were later convicted for official misconduct related to the filing of false reports to justify their use of excessive force.[1]

    iii.    Seton Hall Law School's Center for Policy & Research's Racial Profiling Report: Bloomfield Police and Bloomfield Municipal Court (April 11, 2016): Finding that BPD policing patterns were racially disproportionate and concluding that African Americans and Latinos are, collectively, BPD's target group.[2]

    iv.    Seven out of eight BPD officers with the most uses of force between 2012 and 2016 did so upon a Black person more than

---

[1] See State v. Trinidad, 241 N.J. 425 (2020) (Supreme Court upheld the conviction of BPD Officer convicted for official misconduct, making false statements, falsifying records, and other offenses based on, "overwhelming evidence.").
[2] Available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2760382.

45% of the time in a township where Blacks only account for

approximately 16% of the population.[3]

    v.  Based on population, a Black person in Bloomfield is 252%

more likely to have force used upon them than a non-ethnic

person.[4]

   vi.  Based on arrest, a Black person in Bloomfield is 83% more

likely to be subjected to a use of force than a non-ethnic

person.[5]

74.    Polidoro was cited in a statewide publication as an alarming example of exhibiting racial animus in policing. In fifteen uses of force, over the course of five years, every single one of his subjects was Black.[6]

75.    Despite his deplorable record and its notoriety, Polidoro has remained in a supervisory role with BPD.

76.    This is yet further substantiation of Bloomfield's policy of overlooking and complicitly endorsing improper and disproportionate use of force and other constitutional violations against Blacks.

77.    Although Bloomfield has publicly pronounced themselves to be rehabilitated, racially biased policing and flagrant violations of civilians' rights persists.

---

[3] **NJ.com Force Report, Bloomfield** at http://force.nj.com/database/pd-dept/bloomfield-essex
[4] Id.
[5] Id.
[6] **Hundreds of N.J. cops are using force at alarming rates. The state's not tracking them. So we did,** NJ Advance Media for NJ.com ( Nov. 29, 2018) https://www.nj.com/news/2018/11/nj_police_use_of_force_punch_kick_pepper_spray_sho.html

12

78.     Bloomfield has, "not taken any overt action to address public requests for anti-racist reform, including addressing the issues associated with policing on Bloomfield Ave or adopting a warning before shooting policy," according to a 2020 report.[7]

**COUNT ONE**
**Municipal Liability**
**42 U.S.C. § 1983**
**(Against Township of Bloomfield)**

79.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.     Plaintiff was denied by Bloomfield of his rights to not be deprived of liberty without due process of law, to be free from excessive and unreasonable force, to confront the witnesses against him, to be free from unnecessary and wanton infliction of pain, to be free from malicious prosecution, and the free exercise and enjoyment of the rights and privileges and equal protection of the law due to him under the United States Constitution.

81.     As described hereinabove, Bloomfield has failed to meaningfully address BPD officer's unconstitutional acts.

82.     Bloomfield thus created a tacit policy, practice, and custom of permitting actions like those of the Officer Defendants to continue with impunity.

83.     Bloomfield acted under color of law pursuant to an implicit policy or custom and practice whereby acts of excessive force and falsifying official reports was permitted, tolerated, and condoned.

84.     The injuries suffered by Plaintiff are the highly predictable consequence of the customs and practices of Bloomfield as opportunities for like violations are likely recur.

---

[7] **Bloomfield police stop Black and Latino drivers at disproportionate rates, new analysis shows,** Bloomfield Information Project (September 20, 2020) at https://bloomfieldinfo.org/2020/09/30/bloomfield-police-stop-black-and-latino-drivers-at-disproportionate-rates-new-analysis-shows/

85.     Bloomfield intentionally, knowingly, recklessly, with willful and wanton disregard failed to properly and adequately train, control, supervise, and discipline on a continuing basis its employees, agents, and/or servants amounting to deliberate indifference.

86.     This caused a culture where, as here, officers, such as the Officer Defendants, acted without fear of meaningful reprimand.

87.     The lack of substantial supervision by Bloomfield has created an unsafe culture that incites officers to violate the rights of civilians as they know that they will not be properly held accountable.

88.     Bloomfield, therefore, directly or indirectly, and under color of law, thereby approved or ratified the unlawful, malicious, and wanton conduct of the Officer Defendants.

89.     The ratification of such behavior by Bloomfield was the moving force behind the constitutional violations upon Plaintiff and representative of a course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.

90.     As a direct and proximate result of Bloomfield's acts and/or omissions, Plaintiff was humiliated, disgraced, suffered damage to his reputation, permanent mental and physical injury, monetary loss, and other damages.

### COUNT TWO
**Conspiracy**
**42 U.S.C. § 1983**
**(Against All Defendants)**

91.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     Defendants under color of state law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to conceal the true nature of the

incident and to injure, oppress, threaten, and intimidate Plaintiff in the free exercise and

enjoyment of the rights and privileges and equal protection of the law due to him under the

United States Constitution, including the right to be free from the intentional use of unreasonable

force; the right to be free from unnecessary and wanton infliction of pain; the right to be free

from malicious prosecution, the right to confront witnesses against him, and the right not to be

deprived of his liberty without due process of law.

93.    Defendants took numerous overt steps in furtherance of such conspiracy and did

actually abridge the rights of Plaintiff as set forth above.

94.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff

sustained the damages hereinabove alleged.

**COUNT THREE**
**Unreasonable and Excessive Force**
**42 U.S.C. § 1983**
**(Against Shooting Officers, BPD, and Bloomfield)**

95.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

96.    During the course of the assault upon Plaintiff, the Shooting Officers, BPD, and

Bloomfield intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiff,

thereby depriving Plaintiff of his rights to be free from the use of unreasonable force in violation

of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C.

§ 1983.

97.    Said defendants' acts and/or omissions deprived the Plaintiff of his entitlement to

rights, privileges or immunities secured by the Constitution and/or laws of the United States.

98.     Said defendants' acts and/or omissions under color of law interfered with

Plaintiff's exercise of recognized rights, privileges or immunities secured by the Constitution

and/or laws of the United States.

99.     As a direct and proximate result of said defendants' acts and/or omissions,

Plaintiff sustained the damages hereinabove alleged.

**COUNT FOUR**
**Racial Discrimination**
**42 U.S.C. § 1981, 1983**
**(Against All Defendants)**

100.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

101.    By reason of the foregoing, Defendants violated 42 U.S.C. § 1981, § 1983 and the

Fourteenth Amendment to the United States Constitution by depriving Plaintiff of his

constitutional rights with racial animus.

102.    Because of Plaintiff's race, Defendants, under color of state law, improperly

racially profiled, approached, assaulted, conspired and bore false witness against Plaintiff,

violating his constitutional rights in the manner previously alleged.

103.    Defendants conduct was knowingly undertaken with the intent to deny Plaintiff

his right to the full and equal protection of the law.

104.    As a direct and proximate result of Defendants' acts and/or omissions Plaintiff

sustained the damages hereinabove alleged.

**COUNT FIVE**
**Conspiracy with Racial Animus**
**42 U.S.C. § 1985(3)**
**(Against All Defendants)**

105.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.    Defendants under color of state law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to conceal the true nature of the incident and to injure, oppress, threaten, and intimidate Plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law due to him under the United States Constitution, including the right to be free from the intentional use of unreasonable force; the right to be free from unnecessary and wanton infliction of pain; the right to be free from malicious prosecution, the right to confront witnesses against him, and the right not to be deprived of his liberty without due process of law.

107.    Defendants took numerous overt steps in furtherance of such conspiracy and did actually abridge the rights of Plaintiff as set forth above.

108.    The conduct of the Defendants was motivated by racial animus and by their desire to injure, oppress, threaten, and intimidate Plaintiff because of his race.

109.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff sustained the damages hereinabove alleged.

**COUNT SIX**
**Excessive Force**
**New Jersey State Constitution & N.J.S.A. § 10:6-2**
**(Against Shooting Officers, BPD, and Bloomfield)**

110.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

17

111.     During the course of the assault upon Plaintiff, the Shooting Officers, BPD, and Bloomfield intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiff, thereby depriving Plaintiff of his rights to be free from the use of unreasonable force in violation of the Constitution of the State of New Jersey and the Laws of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act as provided by N.J.S.A. § 10:6-2.

112.     Said defendants' acts and/or omissions deprived the Plaintiff of his entitlement to rights, privileges or immunities secured by the Constitution of the State of New Jersey and the Laws of the State of New Jersey, including but not limited to:

    i.   The right to enjoy and defend life and liberty;

    ii.   The right to pursue and obtain safety and happiness;

    iii.   The right to due process of law;

    iv.   The right to equal protection of the law;

    v.   The right to any other natural and unalienable right retained by the people.

113.     Said defendants' acts and/or omissions under color of law interfered with Plaintiff's exercise of recognized rights, privileges or immunities secured by the Constitution of the State of New Jersey and the Laws of the State of New Jersey.

114.     As a direct and proximate result of said defendants' acts and/or omissions, Plaintiff sustained the damages hereinabove alleged.

### COUNT SEVEN
**Common Law Assault**
**(Against Shooting Officers)**

115.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

116.     The Shooting Officer defendants or any of them, jointly or severally, did commit an assault upon the Plaintiff, whereby the Plaintiff was shot multiple times and otherwise ill-

18

treated, and as a result Plaintiff received permanent and grievous physical injuries in addition to other emotional, psychological, and psychiatric damages.

117.    The Shooting Officers did also recklessly and/or maliciously commit these assaults upon the Plaintiff.

118.    The shooting of the Plaintiff was well in excess of any reasonably necessary force under the circumstances.

119.    As a direct and proximate result of said defendants' acts and/or omissions, Plaintiff sustained the damages hereinabove alleged.

## COUNT EIGHT
### Common Law Negligent and Intentional Infliction of Emotional Distress
### (Against All Defendants)

120.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

121.    Defendants acted intentionally or recklessly with deliberate disregard of a high degree of probability that emotional distress will follow. Defendants' conduct was extreme and so outrageous in character and degree as to go beyond all possible bounds of decency. Defendants' conduct was so atrocious, it is utterly intolerable in a civilized nation of laws.

122.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff sustained the damages hereinabove alleged.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants individually and jointly and pray for relief as follows:

    a.    That he be compensated for violation of his constitutional rights as set forth hereinabove, loss of liberty, emotional distress, humiliation, loss of property, costs and expenses, and other damages and injuries;

b.   That he be awarded punitive damages against all defendants, excluding

Bloomfield;

c.   That he be compensated for attorneys' fees and the costs and

disbursements of this action; and

d.   For such other further and different relief as to the Court may find is just

and proper.

### JURY DEMAND

Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

**THE LAW OFFICE OF THOMAS R. ASHLEY**
Attorneys for Plaintiff

Michael T. Ashley, Esquire

Dated: Newark, New Jersey
        November 8, 2022

## <u>CERTIFICATION</u>

I certify that the matter in controversy is not the subject of any other action pending or contemplated. I further certify that I am aware of no other parties who should be joined in this matter whose identities are known to the plaintiff.

Respectfully submitted,

Michael T. Ashley, Esquire

Dated: Newark, New Jersey
       November 8, 2022